9 So.3d 654 (2009)
A.A.V., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D08-841.
District Court of Appeal of Florida, Fourth District.
March 25, 2009.
Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
In this appeal, A.A.V. challenges an order of the trial court committing him to a level 8, high-risk facility instead of the moderate-risk facility recommended by the Department of Juvenile Justice ("DJJ"). As a consequence of our supreme court's decision in E.A.R. v. State, 4 So.3d 614 (Fla.2009), issued during the pendency of this appeal, we reverse the order appealed and remand the matter to the trial court for additional findings.
Five different "restrictiveness levels" for commitments to DJJ custody are defined in chapter 985, i.e., minimum-risk nonresidential, low-risk residential, moderate-risk residential, high-risk residential, and maximum-risk residential. See § 985.03(44), Fla. Stat. (2007). Chapter 985 further provides that
The court shall commit the child to the department at the restrictiveness level identified [by DJJ] or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.
§ 985.433(7)(b), Fla. Stat.
With respect to the trial court's obligations in the event that it intends to order the child committed to a restrictiveness level other than that recommended by DJJ, in E.A.R., our supreme court wrote that
The only rational or logical means through which the juvenile court may provide "reasons" that explain, support, and justify why one restrictiveness level is more appropriate than anotherand thereby rationalize a departure dispositionis for the court to:

*655 (1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential "lengths of stay" associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenilein the least restrictive settingand maintaining the ability of the State to protect the public from further acts of delinquency.
4 So.3d at 638. The Florida Supreme Court emphasized that "the juvenile court's stated `reasons,' must provide a legally sufficient foundation for `disregarding' the DJJ's professional assessment and PDR by identifying significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child's programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public." Id. at 638.
The trial court in this case did not have the benefit of the supreme court's E.A.R. decision and the reasons offered in support of his departure fall short of this newly-articulated standard. We thus reverse the order appealed and remand the matter to the trial court so that it can either commit the child at the restrictiveness level recommended by DJJ or impose the level 8, high-risk commitment after making the findings required by E.A.R.
Reversed and Remanded.
TAYLOR and MAY, JJ., concur.